FILED

2003 OCT 14  P 4:58

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

DISTRICT COURT
HARTFORD CT

| | | |
|---|---|---|
| ANDREW MONTEITH, JR. PPA<br>CERENE MONTEITH | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | Civil Action No.  302CV00954 DJS |
| v. | ) | |
| | ) | |
| MTD PRODUCTS, INC. | ) | |
| | ) | October 14, 2003 |
| Defendant | ) | |
| | ) | |
| | ) | |

### JOINT TRIAL MEMORANDUM

COME NOW the Plaintiffs, Andrew Monteith, Jr. PPA and Cerene Monteith, and the

Defendant, MTD Products, Inc., by and through counsel, and provide the following Joint Trial

Memorandum pursuant to Joint Trial Memorandum Order of Dominic J. Squatrito, U.S.D.J.

Putman H. Perry, Esq., Bar No. CT14257
Attorney for Defendant
MTD Products, Inc.
ROME MCGUIGAN SABANOSH, P.C.
One State Street, 13th Floor
Hartford, Connecticut 06103
Telephone: 860-493-3524
Facsimile: 860-724-3921
Email: pperry@rms-law.com

_(signature)_ (PHP)

Harold Friedman, Esq. Bar No. CT 23785
Blair A. Jones, Esq. Bar No. CT 24542
Attorneys for Defendant
MTD Products, Inc.
FRIEDMAN GAYTHWAITE WOLF & LEAVITT
Six City Center
P.O. Box 4726
Portland, ME 04112
Telephone:   207-761-0900
Facsimile:  207-761-0186
E-mail:HFriedman@FGWL-LAW.com
       Bjones@FGWL-LAW.com

_(signature)_ (PHP)

Christopher M. Licari, Esq., Bar No. CT 11654
Attorney for Plaintiffs
Licari & Walsh
105 Court Street
New Haven, CT 06511
Telephone:  203-752-1450
Facsimile:  203-752-1401
E-mail: clicari@licari-walsh.com

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Civil Action No. 302CV00954 DJS

ANDREW MONTEITH, JR. PPA
CERENE MONTEITH v. MTD PRODUCTS, INC.

JOINT TRIAL MEMORANDUM

(1)  TRIAL COUNSEL                                           Page 1

(2)  JURISDICTION                                            Page 2

(3)  JURY/NON-JURY                                           Page 2

(4)  LENGTH OF TRIAL                                         Page 2

(5)  FURTHER PROCEEDINGS                                     Page 2

(6)  NATURE OF CASE                                          Page 2

(7)  TRIAL BY MAGISTRATE JUDGE                               Page 2

(8)  LIST OF WITNESSES

    A.  PLAINTIFF WITNESSES                               Page 3

    B.  DEFENSE WITNESSES                                 Page 6

(9)  EXHIBIT LIST

    A.  PLAINTIFF'S EXHIBITS                              Page 8

    B.  DEFENDANT'S EXIBITS                               Page 10

***Rome McGuigan Sabanosh, P.C.*** • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

(10)     STIPULATION OF UNCONTESTED FACTS
AND AGREED STATEMENT OF CONTESTED
ISSUES OF FACT AND LAW                              Page 14

(10)(B)(1)     VOIR DIRE

PLAINTIFF'S PROPOSED VOIR DIRE          Page 16

DEFENDANT'S PROPOSED VOIR DIRE          Page 20

(10)(B)(2)     PROPOSED JURY INSTRUCTIONS

A. PLAINTIFF'S PROPOSED JURY INSTRUCTIONS     Page 25

B. DEFENDANT'S PROPOSED JURY INSTRUCTIONS Page 39

(11)     ANTICIPATED EVIDENTIARY PROBLEMS

A.     PLAINTIFF'S MEMORANUDM
CONCERNING EVIDENTIARY PRBLEMS          Page 60

B.     DEFENDANT'S IDENTIFICATION
OF ANTICIPATED EVIDENTIARY PROBLEMS  Page 62

*Rome McGuigan Sabanosh, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Andrew Monteith Jr. PPA Cerene Monteith, | ) ) ) | |
| Plaintiff | ) ) | Civil Action No. 302CV00954 DJS |
| V. | ) ) | |
| MTD Products, Inc. | ) ) | Date Filed:  October 14, 2003 |
| Defendant | ) ) | |

## JOINT TRIAL MEMORANDUM

**(1) TRIAL COUNSEL**

### For the Plaintiff:

| NAME | ADDRESS | TELEPHONE NO. |
|---|---|---|
| Christopher M. Licari, Esq. | Licari & Walsh, LLC<br>105 Court Street<br>New Haven, CT 06511 | (203) 752-1450 |

### For the Defendant:

| NAME | ADDRESS | TELEPHONE NO. |
|---|---|---|
| Harold J. Friedman, Esq. | Friedman Gaythwaite Wolf & Leavitt<br>6 City Center, Portland, Maine 04112 | (207) 761-0900 |

| Richard T. Coyne, Esq. | Wegman, Hessler & Vanderburg<br>6055 Rockside Woods Boulevard, Suite 200<br>Cleveland, Ohio 44131-2302 | (216) 642-3342 |
| Blair A. Jones, Esq. | Friedman Gaythwaite Wolf & Leavitt<br>6 City Center, Portland, Maine 04112 | (207) 761-0900 |
| Putnam H. Perry, Esquire | Rome, McGuigan, Sabanosh, PC<br>One State Street, 13th Floor<br>Hartford, Connecticut 06103 | (860) 493-3524 |

**(2) JURISDICTION**

This action is subject to the original jurisdiction of this Court pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds the sum or value of $75,000.00. There is diversity of citizenship, as the plaintiff is an individual residing in Connecticut and the only Defendant is an Ohio corporation with a principal place of business in Ohio.

**(3) JURY/NON-JURY**

A jury trial has been requested.

**(4) LENGTH OF TRIAL**

Counselors estimate that the amount of time required for the prosecution of the trial in this matter will be three (3) to four (4) days.

**(5) FURTHER PROCEEDINGS**

Counsel anticipates that the Court will hold hearings on any evidentiary issues raised herein, and a hearing regarding proposed jury instructions.

**(6) NATURE OF CASE**

This is a products liability action brought under §§52-572m *et seq.* of the Connecticut General Statutes. The case arises from a lawnmower incident that is alleged to have occurred on May 9, 1999 in which the minor plaintiff, Andrew Monteith, Jr., sustained a severe blade contact injury to his left foot. The plaintiff claims that the lawnmower was defectively designed in that it lacked proper guarding and seeks monetary damages for mental and physical pain and suffering, permanent impairment, loss of use, scarring, and past and future medical care. The defendant denies that the lawnmower was defectively designed.

**(7) TRIAL BY MAGISTRATE JUDGE**

The parties agree that this case may be tried before the Magistrate Judge. The parties have submitted the Notice, Consent and Order of Reference separately.

[SPACE INTENTIONAL]

**(8) LIST OF WITNESSES**

A. PLAINTIFF WITNESSES:

| NAME | ADDRESS | EXPECTED LENGTH OF TESTIMONY (TO THE TENTH OF AN HOUR) | BRIEF SUMMARY OF EXPECTED TESTIMONY |
|---|---|---|---|
| 1. Cerene Monteith | 248 Pool Road North Haven, CT 06473 | 4.0 | It is anticipated that Ms. Monteith will testify regarding the circumstances surrounding the incident in question, the resultant injury, the general nature of the corresponding treatment, the condition of the minor plaintiff and the effect of this incident upon him. |
| 2. Andrew Monteith Sr. | 120 Cottage Street Meriden, CT 06450 | 4.0 | It is anticipated that Mr. Monteith will testify regarding the use, maintenance and condition of the lawn mower prior to the incident, the circumstances surrounding the incident in question, the resultant injury, the general nature of the corresponding treatment, the condition of the minor plaintiff and the effect of this incident upon him. |
| 3. Andrew Monteith Jr. | | 2.0 | It is anticipated that young Mr. Monteith will testify regarding the circumstances surrounding the incident in question, his injury, treatment and condition, the current appearance of his foot and the corresponding |

| | | | effect it has had upon him. |
|---|---|---|---|
| 4. David Marcarelli | North Haven Fire Department Broadway North Haven, CT 06473 | 0.5 | It is anticipated that firefighter/EMT Marcarelli will testify regarding the injury and condition of the minor plaintiff and the treatment he rendered to him. |
| 5. Colin Coughlin and/or Kurt Fetzer | American Medical Response 55 Church Street New Haven, CT 06510 | 0.5 per witness | It is anticipated that EMT Coughlin and/or EMT Fetzer will testify regarding the injury and condition of the minor plaintiff and the treatment rendered to him. |
| 6. Officer Harris and/or Officer Astorino | North Haven Police Department Linsley St. North Haven, CT 06473 | 0.5 per witness | It is anticipated that Officer Harris and/or Officer Astorino will testify regarding their investigation of the incident in question. |
| 7. Officer Christian T. Evans | Wallingford Police Department 135 North Main Street Wallingford, CT 06492 | 1.0 | It is anticipated that Officer Evans will testify regarding his investigation of the incident in question. |
| 8. Sergeant William Wilson and/or Officer Philip Yara | Wallingford Police Department 135 North Main Street Wallingford, CT 06492 | 0.5 per witness | It is anticipated that sergeant Wilson and/or Officer Yara will testify regarding their investigation of the incident in question. |

| 9. Joseph F. Slade, III, M.D. | Yale University School of Medicine Dept. of Orthopedics and Rehabilitation P.O. Box 208071 New Haven, CT 06520 | 4.0 | It is anticipated that Dr. Slade will testify regarding the nature and causation of the minor plaintiff's injury, the treatment received by the minor plaintiff, and the minor plaintiff's condition and prognosis, including the likelihood of future surgery. It is expected that as an aid to his testimony Dr. Slade will refer to diagnostic test films/results taken during his treatment of Andrew Monteith, Jr. as well as to anatomical diagrams and models of the lower extremity. |
|---|---|---|---|
| 10. Representative of Yale New Haven Hospital | New Haven, CT | 0.5 | It is anticipated that a representative of Yale New Haven Hospital will testify that the charges for the care rendered to Andrew Monteith, Jr. were reasonable and customary. |
| 11. Representative of Yale Practices Plan | New Haven, CT | 0.5 | It is anticipated that a representative of the Yale Practices Plan will testify that the charges rendered to Andrew Monteith, Jr. were reasonable and customary and will also testify regarding the cost of the surgical procedures Dr. Slade has indicated he believes the plaintiff is reasonably likely to require. |

| 12. Jeffrey Ketchman, P.E. | InterCity Testing & Consulting Corporation 167 Willis Avenue Mineola, NY 11501 | 4.0 | It is anticipated that Dr. Ketchman will testify that the involved product was in a defective and unreasonably dangerous condition at the time of the incident and that this condition was a substantial factor in causing the plaintiff's injury. Specifically, Dr. Ketchman will testify that the risk which gave rise to this incident was well known to the defendant at the time the product was designed/manufactured but that it failed to incorporate a design measure which would have reduced the risk when such a design measure was feasible. |
|---|---|---|---|

**B. DEFENSE WITNESSES:**

| NAME | ADDRESS | EXPECTED LENGTH OF TESTIMONY (TO THE TENTH OF AN HOUR) | BRIEF SUMMARY OF EXPECTED TESTIMONY |
|---|---|---|---|
| 12.  Gunter Plamper, P.E. | Cleveland, OH | 3.0 | Will offer expert testimony consistent with his expert report, including, but not limited to, that the mower involved in the accident was not defective or unreasonably dangerous, was reasonably safe and included adequate warnings and instructions, and if used as instructed was safe for use.  The mower included all feasible safety devices available at the time of manufacture, and conformed with the state of the art at that time.  There is no known feasible way to guard against the kind of blade contact encountered by the Plaintiff.  Efforts to design such guards were unsuccessful, as they decreased the functionality of the mower.  The mower included a variety of warnings about the dangers associated with the mowing deck and blade that would have prevented this accident, had |

| | | | they been followed. |
|---|---|---|---|
| 13.  Daniel Fiorillo | Accident scene address: 208 Pond Hill Road, North Haven, CT. | 0.8 | Will testify that he is the current owner of the lawn mower, and that he has altered the lawnmower mechanically since the accident, and does not know the exact condition of the mower at the time of the accident. |

The parties each reserve the right to call any witness listed by the opposing party.

[SPACE INTENTIONAL]

**Rome McGuigan Sabanosh, P.C.** • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

**(9) EXHIBIT LIST**

    **A. Plaintiff's Exhibits**

| No | Exhibit Name | Date | Offered By: | Objection | Bates No. | Admit/ Exclude |
|----|-------------|------|------------|-----------|-----------|----------------|
| | Color photograph of minor plaintiff dating to time of incident. | | | | | |
| | Color photographs (12) of incident scene/subject lawnmower. | | | | | |
| | Invoice and receipt from Lowe's Home | | | | | |

*Rome McGuigan Sabanosh, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

| No | Exhibit Name | Date | Offered By: | Objection | Bates No. | Admit/ Exclude |
|----|-------------|------|-------------|-----------|-----------|----------------|
|  | Centers, Inc. |  |  |  |  |  |
|  | Operator's Manual for subject lawnmower. |  |  |  |  |  |
|  | American Medical Response run sheet dated 5/9/99. |  |  |  |  |  |
|  | Yale New Haven Hospital medical record for 5/9/99 through 5/26/99. |  |  |  |  |  |
|  | Joseph F. Slade, M.D.'s Medical Records of Andrew Monteith, Jr., including, but not limited to, reports dated 6/8/99, 7/6/99, 8/31/99, 10/12/99, 11/23/99, 2/22/00, 7/14/00, 1/16/01, 8/17/01, 8/6/02, 8/6/02 (addendum), 2/14/03, and 2/25/03. |  |  |  |  |  |
|  | Color photographs |  |  | Defendantreserves |  |  |

*Rome McGuigan Sabanosh, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

| No | Exhibit Name | Date | Offered By: | Objection | Bates No. | Admit/ Exclude |
|----|--------------|------|-------------|-----------|-----------|----------------|
|    | of the plaintiff's injury taken by Joseph F. Slade, M.D. |  |  | objection, see section #11, *infra*. |  |  |
|    | Gaylord Rehabilitation Center at Long Wharf medical record for 7/13/99 through 8/23/99 |  |  |  |  |  |
|    | CHC Physician's medical record for 5/4/00, 5/7/01 and 5/22/02. |  |  |  |  |  |
|    | Medical Bill Summary. |  |  |  |  |  |
|    | Curriculum Vitae of Jeffrey Ketchman, P.E. |  |  |  |  |  |
|    | Color photographs (30) of subject mower taken by Jeffrey Ketchman, P.E. |  |  |  |  |  |
|    | United States Patent No. 2,929,186. |  |  | Defendant reserves objection, see |  |  |

*Rome McGuigan Sabanosh, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

| No | Exhibit Name | Date | Offered By: | Objection | Bates No. | Admit/ Exclude |
|---|---|---|---|---|---|---|
| | | | | section #11, *infra*. | | |
| | United States Patent No. 2,972,849. | | | Defendant reserves objection, see section #11, *infra*. | | |
| | United States Patent No. 2,973,613. | | | Defendant reserves objection, see section #11, *infra*. | | |
| | Color photograph excerpted from Inside Edition video depicting a bar guard on a walk-behind mower. (Reference to Inside Edition redacted). | | | Defendant reserves objection, see section #11, *infra*. | | |
| | Picture from *Popular Mechanics*, June 2000 (parties agree to redact any reference to popular mechanics). | | | | | |
| | Side guard design sketches prepared by Jeffrey Ketchman, P.E. | | | | | |
| | Consumer Product Safety Commission | | | | | |

| No | Exhibit Name | Date | Offered By: | Objection | Bates No. | Admit/ Exclude |
|---|---|---|---|---|---|---|
| | "Ride-On Mower Hazard Analysis (1987-1990)" dated September 1993. | | | | | |

## B. Defendant's Exhibits

| No | Exhibit Name | Date | Offered By: | Objection | Bates No. | Admit/ Exclude |
|---|---|---|---|---|---|---|
| | Owner/Operator Manual, Briggs & Stratton Engines | 1997 | | | | |
| | Illustrated Parts List 400 Series Tractors | 9/97 | | | | |
| | Environmental Safety Notice | | | Plaintiff reserves objection, see section #11, *infra*. | | |
| | 400 Series Lawnmower – The Accident Machine | | | | | |
| | 400 Series | | | | | |

*Rome McGuigan Sabanosh, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut  06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

| No | Exhibit Name | Date | Offered By: | Objection | Bates No. | Admit/ Exclude |
|---|---|---|---|---|---|---|
| | Lawnmower – exemplar model | | | | | |
| | Twenty Eight (28) Photos of the Accident Machine Inspection | | | | | |
| | Fifteen (15) Photographs of Exemplar Mower | | | | | |
| | VHS Videotape of Exemplar Mower | | | Plaintiff reserves objection, see section #11, *infra*. | | |
| | VHS videotape of Accident Machine Inspection. | | | Plaintiff reserves objection, see section #11, *infra*. | | |
| | 2003 Husqvarna Catalog | | | | | |
| | Plaintiff's Compliance | 11/22/02 | | | | |

| No | Exhibit Name | Date | Offered By: | Objection | Bates No. | Admit/ Exclude |
|---|---|---|---|---|---|---|
| | with Defendant's Request for Production of Documents dated August 13, 2002 | | | | | |
| | Plaintiff's **Supplemental** Disclosure 1/10/03 | | | | | |
| | Green Acres Elementary School Records of Andrew Monteith, Jr. | Provided 6/4/2003; Supplement on 8/27/03 | | | | |
| | Monteith Sr. depo exhibit 2 – drawing of accident scene | | | | | |
| | Plamper CV | | | | | |
| | Nine (9) Photographs of Mower Guard Test | | | | | |

| No | Exhibit Name | Date | Offered By: | Objection | Bates No. | Admit/ Exclude |
|---|---|---|---|---|---|---|
| | MTD Rider & Tractor Conformance Verification for ANSI B71.1 1996 for Model No. 12AH471F062 dated November 6, 1997; the MTD Ride-On Mowers & Tractors verification dated November 6, 1997 for Model no. 13AH451F352; Report No. ABS97332-L and the MTD Ride-ON Mowers & Tractors verification dated April 16, 1997 for Model No. 12A5470F196. | | | | | |
| | Fifteen (15) photographs of Husqvarna inspection. | | | | | |
| | AMA Guidebook 4th Edition | | | | | |
| | AMA Guidebook 5th Edition | | | | | |

| No | Exhibit Name | Date | Offered By: | Objection | Bates No. | Admit/ Exclude |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  | Specification Sheet for Accident Machine Model No. 13AH471F062 |  |  |  |  |  |
|  | ANSI B71.1 – 1996 Safety Specifications for Power Lawn Mowers, Lawn and Garden Tractors and Lawn Tractors. |  |  |  |  |  |

**NOTES ON EXHIBITS**:

 1.  The parties each reserve the right to introduce any exhibits listed by the other party and to add additional exhibits upon reasonable notice and subject to the right to object prior to trial.

 2.  The parties reserve the right to introduce impeachment and rebuttal exhibits at the time of trial.

 3.  The parties reserve all objections to foundation at trial unless specifically waived.

 4.  The parties agree that clear, complete, legible copies of originals shall be admissible in lieu of originals.

5.  The parties agree to waive objections to exhibits 5, 6, 7, 9 and 10 on the grounds of foundation for purposes of establishing that they are medical records generated and kept in the normal course of business, and as such, are admissible as business records exceptions to the hearsay rule, so that it will be unnecessary to obtain testimony from records custodians of medical care providers to authenticate the records.  The parties further stipulate that the copies listed in exhibits 5, 6, 7, 9 and 10 are fair, accurate and complete copies of those medical records.

6.  The parties agree to waive objections to exhibit 33 on the grounds of foundation for purposes of establishing that the school records are business records generated and kept in the normal course of business so that it will be unnecessary to obtain testimony from a records custodian of the school to authenticate the records.   The parties further stipulate that the copies listed as Defendant's Exhibit 33 are fair, accurate and complete copies thereof.

[SPACE INTENTIONAL]

**(10)  STIPULATION OF UNCONTROVERTED FACTS AND AGREED STATEMENT OF CONTESTED ISSUES OF FACT AND LAW**

Pursuant to paragraph 10 of the joint trial memorandum order the parties hereby submit the following stipulation of uncontroverted facts and agreed statement of contested issues of fact and law.

**A.  <u>STIPULATION OF UNCONTROVERTED FACTS</u>:**

1. On or about May 9, 1999 and for some time prior thereto the defendant, MTD PRODUCTS, INC., was a corporation organized and existing under the laws of the State of Ohio engaged in the design, manufacture, sale and distribution of lawn tractors.

2. Among the defendant's product lines on or about May 9, 1999 was a Model Series 400 front engine 12.5 horse power/38 inch twin blade cutting deck lawn tractor, bearing Model #13AH471F062 and Serial #2A28811-8199.

3. The defendant is a product seller as this term is defined under §52-572m of the Connecticut General Statutes.

4. The defendant expected the lawn mower to reach the consumer without substantial change in condition.

5. The life expectancy of the plaintiff is 66 years.

**B.  <u>AGREED STATEMENT OF CONTESTED ISSUES OF FACT AND LAW</u>**

1. Was the product defective in the way claimed by the plaintiff?

2. Was the lawn mower designed and manufactured consistently with the state of the art available to MTD at the time of manufacture?

   A. If so, what is the legal significance of that?

      i) Is it a complete defense to the plaintiff's claims?

3. Did the defect exist at the time the product left the defendant's possession?

4. Did the product reach the ultimate user without substantial change in condition as to the feature claimed to be a defect?

5. Was the lawn mower substantially altered or modified after leaving MTD and prior to the accident?

   A. If so, what is the legal significance of this alteration or modification?

      i) Need it be sole proximate cause, or simply substantial factor?

6. Did the defect alleged by the plaintiff legally cause the plaintiff's injuries or damages?

7. What is the legal significance, if any, of the conduct of plaintiff's parents?

   A. Were the plaintiff's injuries legally caused, in whole or in part, by the plaintiff's parents?

   B. Were the actions of the plaintiff's parents an intervening cause?

   C. Did the plaintiff's parents misuse the lawn mower, and was their misuse the legal cause of the plaintiff's injuries or damages?

8. Is the existence of, and adequacy of any warnings provided by MTD a relevant issue for consideration by the jury, and if so, did MTD provide warnings and/or instructions adequate to advise potential users of the lawn mower of potential dangers and how to use the lawn mower safely?

9. What amount of money should be awarded to the plaintiff as fair, just and reasonable damages?

   A. Did the plaintiff mitigate his damages?

## (10)(B) (1) VOIR DIRE

### PLAINTIFF'S PROPOSED VOIR DIRE:

1. Other than your current occupation as listed on the biographical sheet, have you had any other occupations within the previous ten years? If so, please describe any such occupation.

2. If different from your current city of residence where have you spent the last ten years?

3. Please describe the occupation of any grown children you may have.

4. Are you familiar with anyone else on the panel other than through any contact you may have today?

5.  Have you ever served on a jury?  If so, was it a criminal or civil case?  Did the jury deliberate?  Did those deliberations result in a final decision?  What was your view of the jury system prior to serving as a juror and did that view change at all as a result of serving as a juror?

6.  Have you ever been a party to a lawsuit?  If so, were you the plaintiff -- that is, the person bringing the lawsuit, or the defendant -- that is, the person against whom the action was brought?  What was the nature of the case?  Is the case still pending?  If not, are you satisfied with how the case was resolved?

7.  Have you ever served as a witness in a case?  If so, please explain your involvement.

8.  Have you ever been asked to serve as a witness in a case but not done so?  If yes, please explain why not.

9.  Other than your own personal experience, has any member of your family or any close friend been involved in a lawsuit either as a party or a witness?  If so, has that resulted in you forming any thoughts or impressions which you believe might be on your mind if you were to serve as a juror in the presence case?

10. This is a civil matter, not a criminal matter.  The plaintiff needs to prove his case only by a preponderance of the evidence and is not required to prove his case beyond a reasonable doubt, which is the standard in a criminal case.  Do you appreciate this distinction?  Would you be able to follow the court's instructions that the plaintiff is

entitled to prevail he proves his case by a preponderance of the evidence or would you expect the plaintiff to prove his case to a higher standard?

11. There are two general types of witnesses who may testify in this case:  those that are referred to as lay witnesses and those that are referred to as expert witnesses.  An expert witness is someone who, because of his education and experience, is considered by the court as qualified to offer opinions and conclusions even though they had no first hand knowledge of the incident.  Lay witnesses and expert witnesses are entitled to be treated equally.  Would you be more inclined to believe a witness simply because this witness is designated as an "expert witness"?

12. If seated as a juror you will need to weigh the testimony of the witnesses, including those designated as expert witnesses.  Would the fact that an expert witness was hired to render an opinion make you either more or less likely to consider that expert's opinion?  Would the fact that an expert is employed by a party make you either more or less likely to consider that expert's opinion?

13. Do you have any issue with a person coming to court and asking to be compensated with money for an injury claimed to have been caused by the fault of another?

14. There are various categories of damages which the law allows, including medical bills, physical pain and suffering, mental pain and suffering, scarring, permanent impairment and loss of life's enjoyment.  Would you be able to award monetary compensation for each of these elements of damages?

15. In general, damages must be fair, just and reasonable. Using only this standard would you be comfortable in determining an amount of monetary compensation to award the plaintiff? Do you have any pre-conceived notions about an amount of money that you would consider to be fair, just and reasonable? Is there a particular monetary figure you have in mind beyond which you would not award any compensation to the plaintiff?

16. Have you ever witnessed an incident in which a small child was severely injured? If so, please describe the circumstances.

17. Have you or any member of your family or a close friend ever suffered an injury requiring hospitalization? If so, please describe the circumstances.

18. Do you, any member of your family or a close friend have a physical condition which causes any pain or limitation of an ongoing nature? If so, please describe the condition.

19. Have you ever owned or operated a lawnmower? If so, are you aware of any particular hazards regarding the use or operation of a lawnmower? Have you ever operated a lawnmower with small children in the vicinity?

20. Have you ever been injured through the use or operation of a lawnmower? If so, please describe the circumstances.

21. Are you aware of any incident in which someone else has been injured as a result of the use or operation of a lawnmower?  If so, please describe the circumstances.

22. Do you have any particular thoughts about the operation of outdoor power equipment, such as lawnmowers, trimmers and the like?  If so, what are those thoughts?

23. Do you believe that a manufacturer has the responsibility for designing a product that is safe to use?

24. Have you ever purchased any product manufactured by the defendant, MTD Products, Inc.?  If so, please describe the product and your experience with it and, if applicable, with MTD Products, Inc.

25. Have you ever heard of the defendant, MTD Products, Inc. other than today?  If so, how and what have you heard?

26. Are you personally acquainted with or, to your knowledge, is any member of your immediate family or any friend personally acquainted with any of the persons who have been listed as potential witnesses?  If so, what is the nature of that acquaintance and do you believe it might affect your ability to fairly consider the issues in the case?

27. Are you personally acquainted with or, to your knowledge, is any member of your immediate family or any friend personally acquainted with any of the parties in this

case? If so, what is the nature of that acquaintance and do you believe it might affect your ability to fairly consider the issues in the case?

28. Are you personally acquainted with or, to your knowledge, is any member of your immediate family or any friend personally acquainted with any of the attorneys in this case? If so, what is the nature of that acquaintance and do you believe it might affect your ability to fairly consider the issues in the case?

29. At the conclusion of all the evidence and after closing arguments by the attorneys you will be given instructions by the court about the law that you would be required to apply in this case. Would you be able to apply the law as given to you by the court even though you might not agree with it?

30. If you are selected as a juror you will be required during the deliberation process to speak your mind and also give consideration to the thoughts of others. Are you comfortable with this process?

31. The parties have submitted this case to a jury trial because they need a third party to make a decision. This is a decision that will have significant consequences for each party. Are you comfortable making such a decision and, if so, do you believe you will be able to make a decision in this case?

32. If you were the plaintiff in this case would you be satisfied to have a jury made up of people such as yourself?

33. Is there any reason why if seated as a juror you believe you might not be able to treat the parties equally or reach a fair and impartial verdict?

### DEFENDANT'S PROPOSED VOIR DIRE:

1. Has anyone read or seen any news reports about Andrew Monteith Jr. or this accident?

   If yes, we would request a private inquiry as follows:
   - A. What did you read or see?
   - B. When?
   - C. What do you remember about it?
   - D. What was your reaction to it
     - i. Were you sad, sorry, angry, ambivalent?
   - E. Based on what you read or saw, did you form an opinion about what happened?
   - F. Did you form an opinion about who was at fault for Andrew's injuries?
   - G. Do you still hold those opinions?


2. Has anyone ever owned an MTD product?

   If yes, we would request a private inquiry as follows:
   - A. What was the product?
   - B. Were you satisfied with the product?
     - i. What was not satisfactory about it?
   - C. Would you hesitate or refuse to buy an MTD product?
     - i. Why?
   - D. Did you ever have any problems with the product?
     - i. What product problems?
     - ii. Did MTD resolve them for you?

3. Has anyone ever been involved in a lawn mower accident, or know of someone who was involved in a lawn mower accident?

If yes, we would request a private inquiry as follows:
- A. Describe the accident and your relationship to the person.
- B. What were the injuries?
- C. Did it result in a lawsuit?
    - i.    Describe the suit.
    - ii.   Were you involved?
    - iii.  Do you think the legal process was fair?
    - iv.   Did you think the result was fair?
    - v.    Do you think the system was biased toward one or the other party?
- D. Whom do you think was at fault in that accident?

4.  Is anyone a mechanical engineer?

If yes, we would request a private inquiry as follows:
- A. Do you have education, training or experience in the evaluation or design of products related to safety or safety features?
    - i.    Please describe.
- B. Do you have education, training or experience in the evaluation or design of products for any purpose?
    - i.    What?

5.  Has anyone ever worked in or for a company that designed or developed or manufactured a product or have a close family member that did?

If yes, we would request a private inquiry as follows:
- A. What company(s)?
- B. What did it design, develop, or manufacture?
- C. What did you do there?
- D. How long were you there?
- E. Is there anything about your work for that company that would make it impossible or difficult for you to be fair and impartial in this case?
    - i.    Why not?
    - ii.   Did you ever complain or try to do anything about it?
        - a.   What was the company's reaction?

         b.   Were you satisfied?

6.  Is anyone involved in the medical field?

       If yes, we would request a private inquiry as follows:
            A.  How?
            B.  Do you have any knowledge or experience in using the AMA Guide to the analysis of permanent impairment?

7.  Has anyone ever been involved in a lawsuit?

       If yes, we would request a private inquiry as follows:
            A.  How were you involved?
            B.  What was the suit about?
            C.  Did you think the system was fair?
            D.  Were you satisfied that the result was fair?
            E.  Did you have an attorney?
                i.       Were you satisfied w/the attorney?
                      a.  Why not?

8.  Does anyone think that lawnmowers, just by their nature, are unsafe, unreasonably dangerous and cannot be operated safely?

       If yes, we would request a private inquiry:
            A.     Why do you feel this way?

9.  Do you think then that if someone is hurt by a lawn mower, it must be the mower manufacturer's fault?

       If yes, we would request a private inquiry as follows:
            A.     Why do you feel this way?

11.  Is there anyone here who has had a negative experience in operating a lawnmower?

       If yes, we would request a private inquiry as follows:
            A.     If yes, what was the negative experience?

B.    Do you believe your negative experience will make it impossible
or difficult for you to be fair and impartial in this case?

12.  Has anyone suffered a permanent injury or does anyone here have a close family member
or fried who has?

If yes, we would request a private inquiry as follows:
A.  What was the injury?
B.  How has it affected you or the person?
C.  Do you think you will be able to make a decision in this case based on the
evidence rather than your sympathy for another person who has a permanent
injury?

13.  Has anyone ever experienced a child being injured seriously?

If yes, we would request a private inquiry as follows:
A.  What happened?
B.  Where were you when it happened?
C.  How is the child now?

14.  Does anyone have a child, now, under the age of 10?

15.  Does anyone have a child with a disability, disfigurement or physical impairment?

If yes, we would request a private inquiry as follows:
A.    What is the disability disfigurement or physical impairment?
B.    How did this occur?
C.    How does it affect your child in his every day life?

16.  Does anyone think it is unnecessary to read an owner's manual for a lawn mower before
using it?

17.  Has anyone here ever disconnected or disabled any safety devices on a lawn mower?

If yes, we would request a private inquiry as follows:
A.  If so, which ones?

B. Why?

18. Does anyone have children they allow to ride on or operate a lawn mower?

If yes, we would request a private inquiry as follows:
    A. How old is the child
    B. How long has he/she been operating a lawn mower?
    C. Are there any instructions or warnings w/your mower advising against this?
        i.    if there were, would you still let the child operate it?

19. Does anyone have children they allow to play in the yard while someone is mowing the lawn?

If yes, we would request a private inquiry as follows:
    A. How old is the child?
    B. Is the child supervised by anyone besides the person mowing the lawn when this is occurring?
    C. Are there any instructions or warnings with the mower advising against this?

        i.    would you still let the child play in the yard?

[SPACE INTENTIONAL]

**(10) (B) (2)  PROPOSED JURY INSTRUCTIONS**

   A.  PLAINTIFF'S PROPOSED JURY INSTRUCTIONS:

**I.  Minor as Plaintiff**

   As you have gathered, Andrew Monteith, Jr. was a minor at the time of the incident and

remains so to this day.   The law in Connecticut is that a minor may bring a civil action only by a

guardian or "next friend".  <u>See</u> *Orsi v. Senatore,* 230 Conn. 459, 466 (1994).   In this case the

plaintiff has brought this action through his mother, Cerene Monteith, as next friend.  As next friend representing her minor son she is not a party to the action, nor has she any interest in the litigation.  Her participation is in name only and the real party in interest is Andrew Monteith, Jr.  For the sake of convenience I will refer to him as "the plaintiff."  See *Gugliemo v. Caldor, Inc.*, 1995 WL 116689, *citing, Botelho v. Curtis*, 28 Conn. Supp. 493, 495 (1970).

## II. Liability

There is a set of statutes in the State of Connecticut known as the Products Liability Act, which I will refer to as simply the Act, which provide that those who put defective products into the stream of commerce shall be liable to people who suffer injuries or damages resulting from those defective products. The plaintiff claims that the defendant is liable – that is, legally responsible – under the Act.

Under the Act, in order to be entitled to recover damages in the form of monetary compensation (I will discuss the topic of damages shortly) the plaintiff must prove the following:

1. That the defendant was a "product seller" within the terms of the Act;

2. That the product was defective in the way claimed by the plaintiff; and

3. That the defect existed at the time the product left the defendant and the product was expected to reach, and did reach, the user without substantial change in condition as to the feature claimed to be a defect.

## A. Product seller

A person or entity is a "product seller" under the Act if, as a manufacturer, wholesaler, distributor or retailer it is in the business of selling, whether the sale is for use by the buyer or for resale to another. If the other elements of a product liability claim are proved, a product seller is liable to any person who is injured by the product, not just to the person to whom it originally sold the product. The defendant has agreed that it is a "product seller" under the Act and, therefore, you need not concern yourself with this element.

## B. Existence of a defect

The condition that the plaintiff claims is a product defect -- that is, that the lawn mower was defectively designed in that it did not have adequate guarding so as to prevent the type of injury that is claimed to have occurred in this case -- is referred to as a "design defect". In order to prove that the product was defective, the plaintiff must prove that the condition that is claimed to be a defect made the product unreasonably dangerous.

A product is defective if, at the time of sale, it is dangerous to an extent beyond that which would be contemplated by the ordinary consumer. The plaintiff claims, in effect, that an ordinary consumer would expect a lawnmower to have adequate guarding. In order to decide the issue of the expectations of a reasonable consumer, you should consider the circumstances surrounding the alleged incident in the context of the ordinary knowledge common to the community as to the product's characteristics, which include, among other things, the product's intended use as well as the safety features an ordinary consumer would reasonably expect to be incorporated into the product. If you find that an ordinary consumer would expect a lawnmower to have guarding intended to minimize the risk of a blade contact injury such as claimed in the present case and that the product did not meet the expectations that the ordinary consumer would have in this regard, then the plaintiff has proven the existence of a product defect. If an ordinary consumer would not expect a lawnmower to have guarding intended to minimize the risk of a blade contact injury such as claimed in the present case, then the plaintiff has not proved that the design or feature at issue constituted a product defect.

A product seller, under Connecticut law, is not in the position of guaranteeing that no one will ever be injured while using its product, and a product seller is not liable for injuries simply because those injuries occurred during the use of its product. The responsibility of a product manufacturer is to produce a product that is reasonably safe.

C. "State of the Art" Evidence

In this case, the defendant introduced evidence supporting its claim that its product embodies the state of the art. "State of the art" is defined as "the level of relevant scientific, technological, and safety knowledge existing and reasonably feasible at the time the product in question was designed for manufacture." In designing a product, a manufacturer cannot be held to standards which exceed the limit of scientific advances and technology that existed at the time of manufacture and therefore cannot be charged with the duty to incorporate technology or features that were not available at the time it manufactured its product. The fact that a product is or is not state-of-the-art does not necessarily relieve the defendant of liability or require such liability. Instead, this evidence is simply one factor you may consider in determining whether the product is defective and unreasonably dangerous due to a defective design. In other words, state-of- the-art evidence relates to the condition of the product and the possibility that the product could have been made safer. A manufacturer, however, has no duty to incorporate a design change if to do so would significantly interfere with the function of the product itself. On the other hand, a product may be unreasonably dangerous even if it embodies the state of the art existing at the time of its design. Accordingly, you may consider the evidence offered by the defendant that its product incorporates relevant scientific, technological, and safety knowledge existing and reasonably feasible at the time of design to determine whether, at the

time of manufacture, the product was dangerous to an extent beyond that which would be contemplated by the ordinary consumer. 73 Conn. B.J. 41, 67 n. 42 (1999), *citing*, *Potter v. Chicago Pneumatic Tool Company*, 241 Conn. 199, 221 n. 15 and 223 n. 17 (1997); *Giglio v. Connecticut Light & Power Co.*, 180 Conn. 230, 234 (1980); *Couch v. Mine Safety Appliances Co.*, 107 Wash. 2d 232, 235-36, 728 P.2d 585 (1986).

D.  Absence of substantial change

The plaintiff must also prove that the defect existed at the time the product left the defendant and the product was expected to reach, and did reach, the user without substantial change as to the feature or condition claimed to be a defect. In this regard you should note that the defendant does not dispute that it expected the product to reach to ultimate user without substantial change in condition. Therefore, you only need decide whether the defect existed at the time the product left the defendant and whether at the time of the incident in question there was any substantial change regarding the condition of the lawnmower that is claimed to be defective. If you find that the defect existed at the time the product left the defendant and that at the time of the incident in question there had not been any substantial change regarding the condition of the lawnmower that is claimed to be defective then you would find for the plaintiff on this issue.