FILED

2003 NOV -6 P 4: 24

US DISTRICT COURT
HARTFORD CT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANDREW MONTEITH, JR. PPA<br>CERENE MONTEITH<br><br>  Plaintiffs<br><br>  v.<br><br>MTD PRODUCTS, INC.<br><br>  Defendant | )<br>)<br>)<br>)<br>)    Civil Action No. 302CV00954 DJS<br>)<br>)<br>)<br>)    November 6, 2003<br>)<br>)<br>) |

## DEFENDANT'S RESPONSE TO PLAINTIFFS' OBJECTION TO EXHIBIT #28, VIDEO TAPE OF EXEMPLAR MOWER

THE Defendant, by and through counsel, responds to Plaintiffs' Objection to the Introduction of Portions of Exhibit 28, as follows:

### FACTS

On May 9, 1999 Andrew Monteith, Sr., the father of the Plaintiff herein, was mowing his lawn with an MTD lawn mower. During the course of mowing his lawn, he was approached by his son, Andrew Monteith, Jr., the Plaintiff herein, and asked if he would give the Plaintiff a ride on the lawn mower. He refused and the Plaintiff left the immediate area of the lawn mower. A short time later, as Andrew Monteith, Sr. continued to mow the

lawn, he saw, over his left shoulder, his son running toward the lawn mower. Just as he neared the lawn mower, the Plaintiff slid feet first toward the mowing deck. Plaintiff's left foot slid under the mowing deck and Andrew Monteith, Sr. attempted to turn the key to the mower off. By the time the mower was turned off, however, Andrew Monteith had made contact with the mower blade with his left foot.

Exhibit 28 is a video tape prepared by counsel for Defendant for presentation at trial. As stated by Plaintiffs in Section 11 of the Joint Trial Memorandum, the video tape may be broken down into three segments: Section 1 is a demonstration of the operation of the exemplar lawn mower and several of its safety features; Section 2 is a static demonstration of various clearances between the bottom of the mowing deck and a table top with the lawn mower in different positions and the accessibility of the mowing blade underneath the mowing deck; and Section 3 is a field demonstration of the engagement of the mowing deck and of various clearances between the bottom of the mowing deck, the ground and blade accessibility.

## DISCUSSION

Plaintiffs object to the use of Sections 2 and 3 of the video tape, but not to Section 1. Plaintiffs claim that Sections 2 and 3 of the video tape are not admissible under F.R.E. 702 because the prejudicial effect of the evidence will outweigh any probative value of the

evidence. Plaintiffs suggest that this evidence can only be admissible because it was used by Defendant's expert, Mr. Plamper, in formulating his opinions in this case. While it is true that Mr. Plamper utilized this information in formulating his opinions, the evidence is also admissible on other grounds. It is admissible evidence in its own right.

### I.      THE VIDEO TAPES ARE ADMISSIBLE DEPICTIONS OF DEMONSTRATIONS AND/OR EXPERIMENTS.

#### A.      The video tape does not depict experiments designed to re-create the accident; the experiments and demonstrations support the principles on which the expert's opinion is based.

Experiments are admissible to assist the jury in evaluating a case where the experiment is designed to illustrate the principles or basis for the expert's opinions, but are not an effort to recreate the conditions of an accident. *Brandt v. French*, 638 F.2d 209 (10th Cir. 1981). "Demonstrations of experiments used to merely illustrate the principles in formulating an expert opinion do not require strict adherence to the facts." *Id.* at 212.

> The majority of the courts addressing the question have held that evidence of demonstrations may be admitted to illustrate an expert's theory about the cause of an accident, even when there are dissimilarities between the conditions prevailing during the experiment and those that prevailed during the accident. *Szeliga v. General Motors Corp.*, 728 F.2d 566, 567 (1st Cir. 1984). Thus, where a party offers an experiment for the purpose of illustrating its expert's relevant testimony, and not for the purpose of attempting specifically to re-create the accident, the evidence may be admitted subject to the clear limiting instructions of the court. *Harvey v. General Motors Corp.*, 873 F.2d 1343, 1356 (10th Cir. 1989) ("There is no question that the results of the experiment were not introduced to recreate

the accident."); *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1278 (7th Cir. 1988) (demonstrations of experiments used merely to illustrate principles informing an expert's opinion do not require strict adherence to the facts); *Champeau v. Freuhauf Corp.*, 814 F.2d 1271, 1278 (8th Cir. 1987) (experiment designed to demonstrate general principles of physics need not be performed in circumstances similar to those surrounding the accident); *Brandt v. French*, 638 F.2d 209, 212 (10th Cir. 1981) (same).

*Burrows v. General Motors Corp.*, 1993 U.S. App. LEXIS 17673 (6th Cir. 1993).

In *Brandt*, the defendant sought to introduce a film depicting various angles at which a motorcycle in motion at various speeds in a parking lot would lean and the radius of curve resulting from such leans. The plaintiff objected, claiming the film failed to illustrate accurately the facts of the accident involved in the case. The Court stated:

> The content of the film was not meant to depict the actual event of the accident but rather to show mechanical principles relative to two vehicles, namely how a motorcycle leans when it turns, for example. See, *Young v. Illinois Central Gulf R. Co.*, 618 F.2d 332, 337 (5th Cir. 1980).

*Id.* at 212. In *Brandt*, the film included a car that was stationary, where the car in the actual accident was moving, and the parking lot where the film was done was not similar to the gravel shoulder where the accident occurred. The purpose of the film, however, was not to recreate the actual accident, and it was, therefore, admissible.

Section 2 of the video tape comprising Exhibit 28 is similar to the film in *Brandt*, in that it is not designed to re-create the accident or to depict the actual event. That section of the video is designed to depict the mechanical principles of how much clearance there is

*Rome McGuigan Sabanosh, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

between the bottom of the mower deck and the ground (or, in this instance, a table), at various points and at various positions. There is no suggestion that it replicates the accident. The use of the wooden extension with a shoe is demonstrative of the accessibility of the blade by a child's shoe in various conditions. The video tape comprising Exhibit 28 at Section 2 is not designed to duplicate the accident or the accident conditions, but rather, is to demonstrate various clearances.

Section 3 of the video also does not seek to recreate the accident. The first portion of Section 3 simply depicts defendant's expert, Mr. Plamper, driving the mower with the mowing deck engaged, demonstrating the manner in which the deck operates and behaves in mowing conditions. Subsequently, the mower is driven to a mound in the terrain, where measurements are taken at various positions on the mound, again demonstrating the various clearances between the bottom of the mowing deck and the ground at various points on a mound, or uneven terrain. Finally, Mr. Plamper tests to determine if a wooden foot probe affixed with a child's shoe will be able to be slid under the mowing deck with the lawn mower at various positions on the mound with varying clearances between the mowing deck and the ground.

This is not a recreation of the accident. There is no suggestion that the tape depicts what actually happened in the accident at issue herein. The video tape depicts certain

physical characteristics of the lawn mower and mowing deck that were used by Defendant's expert in formulating his opinions regarding the safety of the design of the lawn mower, the accessibility of the blade, the foreseeability of the accident and the cause of the accident. The fact that there are similarities to the accident does not render the depiction an accident reconstruction.

### B.  Section 3 of the video tape does bear sufficient similarity to the accident to be admissible.

Even if the Court finds that Section 3 of the video tape is only admissible if it is sufficiently similar to the accident, the experiment is admissible. An experiment need not be strictly identical to the conditions of an accident to be admissible. *Lobel v. American Airlines, Inc.*, 205 F.2d 927 (2nd Cir. 1953). "Perfect identity between experimental and actual conditions is neither attainable nor required." *Ramseyer v. General Motors Corp.*, 417 F.2d 859 (8th Cir. 1969) (citing *Lobel*, 205 F.2d 927 (2nd Cir. 1953)). "Dissimilarities effect the weight of the evidence, not admissibility." *Id.* (citing *Lever Bros. v. Atlas Assur. Co.*, 131 F.2d 770 (7th Cir. 1942)).

Section 3 of the video tape to be offered as Exhibit 28 depicts a lawn mower that is the exact same model as the one involved in the accident. It depicts that mower on a rise very similar to the one on which the accident occurred, and in the same posture as the accident mower was found immediately after the accident by the police. This can be

confirmed with the photographs taken and supplied by the police, as well as the measurements they took, which provided the information necessary to arrange the mowing deck to be in the same position relative to the ground on the exemplar mower as the accident mower deck was immediately after the accident.

> As the Court stated in *Lobel*:
>
> The strictness of identity of conditions required by plaintiff's contention would mean -- as, indeed, he says -- that no showing by experiment in a field of mechanical operation would ever be possible, since the conditions could not so be duplicated, and hence jury and court would be deprived of helpful and informative illustrative evidence.

*Lobel*, 205 F.2d 927, 931 (2nd Cir. 1953).

Further, it would have been virtually impossible for Defendants to duplicate the conditions at the time of the accident since the machine has been materially altered after the accident and did not run at the time of Defendant's inspection. In addition, the ground was covered with snow, making a video tape impractical at the time.

In this case, the conditions do not perfectly duplicate the conditions of the accident, but they are sufficiently similar to allow the depiction to provide helpful and informative information to the jury in deciding this case.

## II.   THE PROBATIVE VALUE IS NOT OUTWEIGHED BY PREJUDICIAL EFFECT OF THE VIDEO TAPE.

Plaintiffs claim that the prejudicial effect of this video tape depiction outweighs any probative value of the evidence, and it should, therefore, be inadmissible under F.R.E. 702. Most importantly, Plaintiffs have not brought forth any evidence as to what the prejudice to his case would be. Plaintiffs merely assert that the "probative value of this evidence is questionable". (Joint Trial Memorandum, Section 11). Plaintiff's objection is that the demonstration by Mr. Plamper " ... bears only an analogous relationship to the mechanics and circumstances of the claimed injury ... ." *Id.* MTD does not agree that the depictions on the video tape are "questionable". Rather, the video tape simply depicts accurate physical characteristics of the exemplar mower, and provides information that was used by MTD's expert in reaching his opinions in this case. The video tape is an aid for the jurors in following along with, and understanding, the factual bases for Mr. Plamper's expert opinions. Other than supporting the opinions, the depictions are not prejudicial to Plaintiffs.

WHEREFORE, the Defendant prays the Court deny Plaintiffs' Motion to Exclude the Introduction of the Video Tape Comprising Exhibit 28.

RESPECTFULLY SUBMITTED,
MTD PRODUCTS, INC.

_____
Putnam H. Perry, Esq. Bar No. ct14257
Rome McGuigan Sabanosh, P.C.
One State Street, 13th Floor
Hartford, CT 06103
Telephone: (860) 549-1000
Facsimile: (860) 724-3921
E-mail: pperry@rms-law.com
Its Attorney

Harold Friedman, Esq., Bar No. ct23785
Friedman Gaythwaite Wolf & Leavitt
Six City Center, P.O. Box 4726
Portland, ME 04112
Telephone: 207-761-0900
Facsimile: 207-761-0186
E-mail: HFriedman@FGWL-LAW.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of Defendant's Response to Plaintiff's Objection to Exhibit #28, An Environmental Safety Notice, has been sent via first-class, postage prepaid, mail on November 6, 2003 to the following:

Christopher M. Licari, Esq.
LICARI & WALSH, LLC
105 Court Street
New Haven, CT  06511

_____
Putnam H. Perry, Esq.

364636